UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT D. W.,

             Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

CASE NO. 3:22-cv-05767-GJL

ORDER ON PLAINTIFF'S
COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 2. This matter has been fully briefed. *See* Dkts. 11–15.

Plaintiff is a 56-year-old man with prior employment as a tire builder and a construction worker. The Administrative Law Judge ("ALJ") found that Plaintiff is not disabled because he has the residual functional capacity ("RFC") to perform light work. In finding Plaintiff not disabled, the ALJ rejected Dr. Lee's medical opinion, but this rejection was not supported by

1  substantial evidence, therefore, the ALJ erred. The ALJ's error is not harmless because the ALJ's

2  evaluation of the medical opinion evidence and the RFC determination could have well differed

3  had the improperly rejected evidence been credited. Therefore, this matter is remanded for

4  further proceedings.

5  **PROCEDURAL HISTORY**

6  Plaintiff was a recipient of disability insurance benefits ("DIB") from July 2011 to June

7  2015, pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act ("the Act"). *See*

8  Administrative Record ("AR") 186. In a June 2015 continuing disability review, the Social

9  Security Administration ("the agency") determined Plaintiff had "medically improved" and thus

10  was no longer disabled. AR 186, 281–83. A hearing was scheduled in April 2017 so Plaintiff

11  could appeal the termination of his benefits. AR 186. The April 2017 hearing was rescheduled to

12  July 2017 because Plaintiff was participating in a rehabilitation program through April 2017. *Id.*

13  Plaintiff failed to appear in the rescheduled July 2017 hearing, prompting the agency to

14  determine Plaintiff was no longer disabled as of July 2017 for lack of cooperation, pursuant to 20

15  C.F.R. § 404.1594(e)(2). AR 192. Plaintiff requested another hearing in October 2018 to appeal

16  the termination of his benefits, but because he failed to submit his request in a timely manner, the

17  agency dismissed Plaintiff's request. AR 110–14.

18  In April 2019, Plaintiff applied for supplemental security income ("SSI") benefits,

19  pursuant to 42 U.S.C. § 1382e (Title XVI) of the Act, and reapplied for DIB, alleging in both

20  applications a disability onset date of March 6, 2011. AR 117, 130, 146, 162, 326–39. Both

21  applications were denied initially and upon reconsideration. AR 128, 141, 161, 178. Plaintiff's

22  requested hearing was held before ALJ Allen Erickson on April 13, 2021, where Plaintiff

23  attempted to reopen his previous DIB claim. *See* AR 36–61. The ALJ postponed the hearing and

24

1    scheduled a second hearing on July 13, 2021, where Plaintiff amended his alleged onset date of

2    disability for both applications to August 1, 2017. *See* AR 62–109. Plaintiff met the insured

3    status requirements of the Act through June 30, 2022, therefore the relevant period for his DIB

4    application is August 1, 2017 through June 30, 2022. AR 17. On August 12, 2021, the ALJ

5    issued a written decision in which the ALJ concluded Plaintiff was not disabled pursuant to the

6    Act. *See* AR 12–34.

7        The Appeals Council denied Plaintiff's request for review, making the written decision

8    by the ALJ the final agency decision subject to judicial review. AR 6–11; *see* 20 C.F.R. §§

9    404.981, 416.1481. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's

10   August 2021 written decision in October 2022. *See* Dkt. 1. Defendant filed the sealed

11   administrative record regarding this matter on January 3, 2023. *See* Dkt. 9.

12                              **BACKGROUND**

13       Plaintiff was born in 1967 and was 49 years old on the amended alleged date of disability

14   onset of August 1, 2017. *See* AR 26. Plaintiff has at least a high school education and previously

15   worked as a tire builder and a construction worker. AR 26, 73–75. According to the ALJ,

16   Plaintiff has at least the severe impairments of congestive heart failure, major depressive

17   disorder, and panic disorder with agoraphobia. AR 17.

18                          **STANDARD OF REVIEW**

19       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

20   social security benefits if the ALJ's findings are based on legal error or not supported by

21   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

22   Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

23   ///

24

1

**DISCUSSION**

2      In Plaintiff's Opening Brief, Plaintiff raises the following issues: (1) whether the ALJ

3  failed to discuss Plaintiff's request to reopen Plaintiff's previous determination of nondisability

4  in 2017, (2) whether the ALJ erred at step three in finding Plaintiff did not meet Listing 4.02, (3)

5  whether the ALJ erred in evaluating medical opinion evidence, (4) whether the ALJ erred in

6  evaluating Plaintiff's subjective symptom testimony, and (5) whether the ALJ failed to develop

7  the record. *See* Dkt. 11.

8      **I.      Whether the ALJ Erred by Failing to Discuss Whether to Reopen Plaintiff's**

9              **Previous Determination to Terminate Plaintiff's Disability Benefits**

10      Plaintiff contends the ALJ erred by failing to consider in his decision whether to reopen

11  Plaintiff's previous DIB claim. Dkt. 11 at 3–6. The Court rejects Plaintiff's argument.

12      During Plaintiff's first hearing before ALJ Erickson in April 2021, Plaintiff's counsel

13  requested to reopen Plaintiff's previous DIB claim. AR 42. The ALJ appeared to be unfamiliar

14  with Plaintiff's request, and decided to hold another hearing to properly address Plaintiff's

15  argument. *See* AR 46–58. A second hearing with ALJ Erickson was held in July 2021, but

16  Plaintiff's counsel did not repeat his request to reopen Plaintiff's previous claim. *See* AR 68–70.

17  While Plaintiff's counsel acknowledged that Plaintiff's benefits were terminated in 2017, the

18  record does not show that Plaintiff's counsel attempted to request the reopening of Plaintiff's

19  previous claim, like he did in April 2021. *See* AR 42, 68–70. Plaintiff's counsel instead formally

20  requested to amend Plaintiff's alleged onset date of disability to August 2017. *See* AR 68–70.

21  Plaintiff's argument that the ALJ failed to address his request in his decision thus fails,

22  considering that the record does not show that he made such a request.

23

24

1        Plaintiff also suggests the Court should remand because there is ambiguity as to whether

2    Plaintiff's failure to appear in the July 2017 hearing was due to a "good cause." Dkt. 11 at 5–6.

3        After a claimant has been determined disabled under the Act, the agency can later

4    determine the claimant is no longer disabled based on the claimant's medical improvement or

5    when a claimant does not cooperate with the agency, specifically when the claimant "fail[s],

6    without good cause, to do what [the agency] asks." *See* 20 C.F.R. § 404.1594(e). When there is

7    ambiguity in the record about whether the plaintiff's failure to respond to the agency was due to

8    a good cause, the federal court should not make its own findings. Instead, the reviewing court is

9    required to remand and allow the plaintiff a full opportunity to present the issue to the Social

10   Security Administration. *Dexter v. Colvin,* 731 F.3d 977, 981-982 (9th Cir. 2013). To determine

11   whether a "good cause" exists, the agency considers: (1) what circumstances kept a claimant

12   from missing a deadline; (2) whether the agency's action misled a claimant; (3) whether the

13   claimant did not understand the Act or any of the agency's decisions; and (4) whether the

14   claimant had any "physical, mental, educational, or linguistic limitations (including any lack of

15   facility with the English language) which prevented [the claimant] from filing a timely request or

16   from understanding or knowing about the need to file a timely request for review." *See* 20 C.F.R.

17   § 404.911(a).

18       As discussed, Plaintiff's DIB benefits were terminated in June 2015 after the agency

19   determined Plaintiff had "medically improved." AR 186, 281–83. After Plaintiff appealed the

20   termination, an initial hearing was scheduled for April 25, 2017. AR 186. Plaintiff's former

21   counsel asked to reschedule the hearing because Plaintiff was participating in a rehabilitation

22   program that would conclude on April 27, 2017. *Id*. The record shows that, though the hearing

23   was rescheduled to July 25, 2017 as requested, Plaintiff failed to appear at the hearing. *Id*. The

24

1    record further shows Plaintiff's former counsel was present at the July 2017 hearing and that

2    Plaintiff "never responded" to his "efforts to contact him regarding his reason for failing to

3    appear at his hearing." *See id*. The agency, after not having received any explanation or reason to

4    again reschedule Plaintiff's hearing, determined Plaintiff was no longer disabled as of July 2017

5    for lack of cooperation. AR 186–93; 20 C.F.R. § 404.1594(e)(2). There is nothing else in the

6    record, and Plaintiff has put forth no evidence, that would suggest that he had a "good cause," as

7    defined by the Act, for failing to appear at the July 2017 hearing. Accordingly, the Court will not

8    remand on the grounds that there is ambiguity as to whether Plaintiff had a good cause to appear

9    at that hearing.

10          Plaintiff also argues he has raised a "colorable due process claim" because he was

11   hospitalized when the hearing was held regarding the termination of his benefits and, that as a

12   result, his benefits were terminated without "having a reasonable opportunity to be heard." Dkt.

13   11 at 6.

14          Even if there is sufficient evidence in the record for the Court to determine whether a

15   plaintiff suffered from circumstances that made it difficult for plaintiff to understand or take

16   steps to respond to the situation in which the previously-awarded benefits were suspended,

17   thereby excusing the plaintiff's noncompliance, the Court considers whether there is a colorable

18   due process violation. *Udd v. Massanari,* 245 F.3d 1096, 1101-1102 (9th Cir. 2001). A

19   constitutional claim is "not 'colorable', if it 'clearly appears to be immaterial and made solely for

20   the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous.'" *Hoye v.

21   Sullivan*, 985 F.2d 990, 991–92 (9th Cir. 1992) (citations omitted). The mere assertion of a bare

22   constitutional violation without supporting allegations is not a colorable constitutional claim.

23   *Klemm v. Astrue,* 543 F.3d 1139, 1144 (9th Cir. 2008) (internal quotation marks and citation

24

omitted). "Rather, the claim must be supported by facts sufficient to state a violation of

substantive or procedural due process." *Id.* (internal quotation marks and citation omitted). Here,

Plaintiff has failed to provide any such bases for his constitutional claim. Plaintiff's assertion

relies on the fact that he was hospitalized at the time of the hearing, but the record makes it clear

he was hospitalized at the time of the April 2017 hearing, and this necessitated the rescheduling

of the hearing later to July. *See* AR 186. Again, the record shows Plaintiff failed to appear at the

July 2017 hearing with no explanation, even though his previous counsel made several attempts

to contact him. *See id.* Plaintiff has not put forth any additional facts that would indicate his

absence at the hearing was a due process violation, therefore the Court finds Plaintiff has failed

to raise a colorable constitutional claim.

## II.      Whether the ALJ Erred at Step Three

Plaintiff contends the ALJ erred at step three by declining to find that he meets Listing

4.02. Dkt. 11 at 6–9. The Court disagrees.

At step three, the ALJ determines if a claimant's impairment meets or equals an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listing"). *See Tackett v.

Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Listing describes specific impairments of each

of the major body systems which are considered "severe enough to prevent a person from doing

any gainful activity." *See also Tackett*, 180 F.3d at 1099. The claimant bears the burden of proof

regarding whether or not she has an impairment that meets or equals the Listings. *Burch v.

Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). The claimant meets this burden by presenting

"medical findings equal in severity to *all* the criteria for the one most similar listed impairment."

*Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521,

531 (1990); 20 C.F.R. § 416.926(a)). A claimant cannot rely on overall functional impact but

1    must demonstrate that the impairment equals each criterion in the Listing. *Id.* The ALJ "is not

2    required to discuss the combined effects of a claimant's impairments or compare them to any

3    listing in an equivalency determination, unless the claimant presents evidence in an effort to

4    establish equivalence." *Burch*, 400 F.3d at 683. If a claimant meets or equals a Listing, the

5    claimant is considered disabled without further inquiry. *See* 20 C.F.R. §§ 404.1520(d),

6    416.920(d). "A generalized assertion of functional problems," however, "is not enough to

7    establish disability at step three." *See Tackett*, 180 F.3d at 1100.

8          A claimant's impairments meets or equals Listing 4.02 by showing, in relevant part, the

9    following:

10         A.  Medically documented presence of one of the following:

11         1. Systolic failure . . . , with left ventricular end diastolic dimensions greater than
           6.0 cm or ejection fraction of 30 percent or less during a period of stability (not
12         during an episode of acute heart failure) . . .

13         *AND*

14         B.  Resulting in one of the following:

15         1. Persistent symptoms of heart failure which very seriously limit the ability to
           independently initiate, sustain, or complete activities of daily living in an individual
16         for whom a[] [medical consultant], preferably one experienced in the care of
           patients with cardiovascular disease, has concluded that the performance of an
17         exercise  test  would  present  a  significant  risk  to  the  individual . . .

18   20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Listing 4.02) (emphasis added).

19         Plaintiff argues the first requirement of the Listing is met based on two treatment notes

20   from October 2016 and May 2017, which show his left ventricular ejection fraction was

21   measured at 20-25% during periods of stability. Dkt. 11 at 8 (citing AR 1488, 1613). But there is

22   nothing in the treatment notes, and Plaintiff does not explain, how these results show that they

23   were findings from a period of stability. Further, both treatment notes predate Plaintiff's

24

1   amended alleged onset date of August 1, 2017, therefore they, by themselves, would not be

2   probative to the issue of whether Plaintiff met the Listing during the relevant period. *See*

3   *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions

4   that predate the alleged onset of disability are of limited relevance.").

5       Plaintiff next argues the second requirement of the Listing is met based on his "persistent

6   symptoms," including dizziness, fatigue, and difficulty walking long distances. Dkt. 11 at 8.

7   While Plaintiff himself did testify to such symptoms, Plaintiff does not cite to any evidence to

8   show that a medical consultant has found him to be as limited as he alleges due to his symptoms.

9   But even if Plaintiff was able to, because Plaintiff did not meet the first requirement of the

10  Listing, Plaintiff nonetheless is unable to show that he is disabled pursuant to Listing 4.02.

11      Plaintiff also argues the ALJ erred by failing to provide a sufficient explanation as to why

12  he did not meet Listing 4.02. Dkt. 11 at 8–9; AR 19. However, throughout the ALJ's entire

13  decision, the ALJ explained how the record shows Plaintiff's heart condition had improved and

14  that the symptoms he was experiencing were due to other possible impairments. *See infra*

15  Section IV. A court errs "by overlooking the ALJ's full explanation." *Kaufmann v. Kijakazi*, 32

16  F.4th 843, 851 (9th Cir. 2022). Further, the reviewing court is "not deprived of [its] faculties for

17  drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881

18  F.2d 747, 755 (9th Cir. 1989). Though the ALJ did not cite evidence specifically during his step

19  three discussion, the ALJ's finding that Plaintiff did not meet Listing 4.02 was nonetheless

20  supported by his explanation elsewhere in his decision. The Court, therefore, finds the ALJ did

21  not err at step three.

22  //

23  ///

24

1

### III.    Whether the ALJ Erred in Evaluating Medical Opinion Evidence

2    Plaintiff contends the ALJ erred in evaluating the medical opinion of Dr. Lee, and by

3  failing to incorporate the opinions of Dr. Virji, Dr. Alto, Dr. Eisenhauer, and Dr. Anderson into

4  Plaintiff's RFC. Dkt. 11 at 9–13.

5    A.  Dr. Mike Lee

6    Plaintiff filed both his SSI and DIB applications in April 2019. AR 117, 130, 146, 162,

7  326–39. For applications filed after March 27, 2017, ALJs must consider every medical opinion

8  in the record and evaluate each opinion's persuasiveness, with the two most important factors

9  being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022);

10  20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability concerns how a medical source supports

11  a medical opinion with relevant evidence, while consistency concerns how a medical opinion is

12  consistent with other evidence from medical and nonmedical sources. *See id.*; 20 C.F.R. §§

13  404.1520c(c)(1), (c)(2); 416.920c(c)(1), (c)(2). Under the new regulations, "an ALJ cannot reject

14  an examining or treating doctor's opinion as unsupported or inconsistent without providing an

15  explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

16    In January 2020, Dr. Lee opined that Plaintiff is unable to meet competitive standards for

17  making simple work-related decisions and completing a normal workday and workweek without

18  interruptions from psychologically based symptoms. AR 1829. Dr. Lee further opined Plaintiff

19  would find dealing with the public and supervisors stressful, and that based on Plaintiff's mental

20  health symptoms, Plaintiff would be absent from work four days a month. AR 1831.

21    The ALJ first discounted Dr. Lee's opinion because it was unsupported by his own

22  examination notes, specifically that Plaintiff presented appropriately groomed and dressed, was

23  friendly and cooperative, and was able to quickly establish rapport. AR 25 (citing AR 1813,

24

ORDER ON PLAINTIFF'S COMPLAINT - 10

1955). Yet, the ALJ does not explain how Plaintiff's presentations from two appointments with Dr. Lee in 2019 do not support his 2020 opinion about Plaintiff's ability to function in a work setting. Further, the ALJ also seems to side-step Dr. Lee's other findings from the cited treatment notes, which show Plaintiff was found to be anxious. AR 1813, 1955. The ALJ did not rely upon substantial evidence when he concluded that Dr. Lee's opinion is unsupported by his own findings. As such, in discounting his opinion for this reason, the ALJ erred.

The ALJ also discounted Dr. Lee's opinion because it was inconsistent with Plaintiff's mental status examinations throughout the record showing he had adequate attention and memory and was logical and goal directed. AR 25 (citing AR 1811–12, 1924, 1940). But again, Plaintiff's presentations during his appointments do not necessarily negate Dr. Lee's opinion about Plaintiff's ability to function in a work setting. Further, the same treatment notes cited by the ALJ also show Plaintiff wanted to end his appointment early because of his anxiety, and he was observed "to be struggling with anxiety and depressive symptoms which may be longstanding." AR 1812, 1924, 1940. Again, the ALJ's finding that Dr. Lee's opinion was inconsistent with Plaintiff's record is not supported by substantial evidence, therefore, in discounting it for this reason, the ALJ erred.

An error is harmless if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118–1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. §2111)).

1    The ALJ's errors in this case were not harmless. Had the ALJ properly evaluated Dr.

2    Lee's opinion, the ALJ may have assessed Plaintiff's RFC differently and, consequently,

3    affected the ALJ's ultimate determination of nondisability. Accordingly, the ALJ's harmful error

4    requires reversal. The Court directs the ALJ to reassess Dr. Lee's opinion on remand.

5         B.  Dr. Alnoor Virji, Merry Alto, M.D., Renee Eisenhauer, Ph.D., and Jon Anderson,

6              Ph.D.

7         Plaintiff also contends the ALJ erred by failing to include in his RFC the limitations

8    opined by Dr. Vijri, Dr. Alto, Dr. Eisenhauer, and Dr. Anderson because the ALJ found their

9    opinions persuasive. Dkt. 11 at 12–13. The Court has reviewed Plaintiff's argument, but declines

10   to reach them as the Court has already determined that remand is necessary, and Plaintiff's RFC

11   must be reevaluated for the reasons given above. *See* Social Security Ruling 96-8p, (an RFC

12   "must always consider and address medical source opinions"); *Valentine v. Comm'r Soc. Sec.*

13   *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's

14   limitations is defective").

15   **IV.   Whether the ALJ Erred in Evaluating Plaintiff's Subjective Symptom**

16        **Testimony**

17        Plaintiff contends the ALJ erred in evaluating his subjective symptom testimony. Dkt. 11

18   at 13–15.

19        When a claimant has medically documented impairments that could reasonably be

20   expected to produce some degree of the symptoms she alleges, and the record contains no

21   affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

22   severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

23   *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d

24

1273, 1281 (9th Cir. 1995)). "The standard isn't whether [the Court] is convinced, but instead

whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v.*

*Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff testified that he feels exhausted, has difficulties waking up and sleeping, is

nauseous, and profusely sweats when his heart pressure is low. AR 77. Plaintiff explained he

experiences these symptoms two to three days a week. AR 84. Plaintiff testified he cannot walk

100 yards without having to stop, and he can only stay on his feet for 15 minutes every hour. AR

86. He stated he can pick up items weighing up to 20 pounds, and pick up and carry items

weighing up to 10 pounds. AR 88. As for his mental health, Plaintiff testified he does not like

being around others, and has panic attacks three to four times a month, and each panic attack can

last for half an hour. AR 82, 91. Plaintiff also testified he relies on his son and his significant

other to manage household chores. AR 80–82.

The ALJ first discounted Plaintiff's testimony regarding his heart condition because there

was "little ongoing treatment or objective testing." AR 22. An ALJ may discount the claimant's

testimony when the "'level or frequency of treatment is inconsistent with the level of

complaints.'" *Molina*, 674 F.3d at 1113 (internal quotations omitted). Here, the ALJ pointed out

that in August 2017, Plaintiff's right ventricle was mildly dilated and his left ventricle

moderately dilated, but nonetheless improved compared to a January 2017 examination. AR 24

(citing AR 1715). The ALJ noted that Plaintiff was hospitalized in May 2018 for nausea and

vomiting and that his cardiac condition was considered as a possible cause. AR 1603. However,

the treatment notes stated Plaintiff appeared euvolemic on exam, his vomiting was possibly

caused by alcoholic gastritis, and findings from the exam were consistent with compensated

1    heart failure. AR 1603–04. The ALJ also pointed out similar findings from treatment notes from

2    March 2019. *See* AR 1648.

3          The ALJ then discounted Plaintiff's testimony regarding his mental health because his

4    recent treatment notes show Plaintiff was "largely stable" or there were "little to no mental

5    health treatment" during the relevant period. AR 22. Evidence that medical treatment helped a

6    claimant "'return to a level of function close to the level of function they had before they

7    developed symptoms or signs of their mental disorders' . . . can undermine a claim of disability."

8    *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). The ALJ's assessment of the record is

9    supported by substantial evidence. The records relied on by the ALJ show that though Plaintiff

10   reported symptoms of depression, he also reported improvement in his mood, insomnia, and

11   anxiety due to medication. AR 1600, 1747, 1799, 1899, 1907, 1948. Given Plaintiff's own

12   reports of improvement, the ALJ could reasonably discount Plaintiff's testimony.

13         Plaintiff argues the ALJ "placed undue weight on the evidence of improvement," but

14   does not direct the Court to any evidence to show the ALJ's findings were not supported by the

15   record. *See* Dkt. 11 at 14. Given the lack of specificity in Plaintiff's argument, Plaintiff has failed

16   to demonstrate any harmful error on this issue. *See Bailey v. Colvin*, 669 Fed. Appx. 839, 840

17   (9th Cir. 2016) (citing *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012)) (finding no error

18   where the claimant did not "demonstrate prejudice from any errors"). The Court therefore rejects

19   Plaintiff's conclusory argument.

20         In sum, the ALJ's rationale in discounting Plaintiff's testimony regarding his heart

21   condition and mental health was clear enough "that it has the power to convince." *Smartt*, 53 F.

22   4th at 499. Therefore, the Court finds the ALJ did not err in discounting Plaintiff's testimony.

23   ///

24

1      ## V.      Duty to Develop Record

2          Plaintiff argues the ALJ's record is inadequate, and the ALJ had a duty to further develop

3   it because "there were no medical opinions in the record that the ALJ found to be entirely

4   persuasive or that adequately addressed Plaintiff's current functioning." Dkt. 11 at 14–15.

5          The ALJ "has an independent 'duty to fully and fairly develop the record and to assure

6   that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th

7   Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v.*

8   *Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))). "The ALJ's duty to supplement a

9   claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is

10  inadequate or the ALJ's reliance on an expert's conclusion that the evidence is

11  ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing *Tonapetyan*, 242 F.3d

12  at 1150). However, the ALJ's duty to develop the record cannot be used to shift the burden of

13  proving disability to the ALJ. *See Mays v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001) (noting

14  it is the claimant's "duty to prove she was disabled" and she cannot "shift her own burden" to

15  the ALJ by virtue of the ALJ's duty to develop the record). It is the claimant who is "responsible

16  for providing the evidence" for ultimately proving she is disabled. *See Gray v. Comm'r. of Soc.*

17  *Sec. Admin.*, 365 Fed. Appx. 60, 63 (9th Cir. 2010).

18         Here, Plaintiff fails to argue with specificity which part of the record is so ambiguous that

19  it would trigger the ALJ's duty to further develop it. Further, the ALJ has neither made a finding

20  that the record is inadequate nor relied on an expert stating the evidence is ambiguous. The

21  Court, therefore, rejects Plaintiff's argument.

22  ///

23  ///

24

1

## VI.    Remand for Further Proceedings

2        "The decision whether to remand a case for additional evidence, or simply to award

3    benefits[,] is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

4    1987). If an ALJ makes an error and the record is uncertain and ambiguous, the court should

5    remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir.

6    2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors,

7    it should remand the case for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th

8    Cir. 2017).

9        The Ninth Circuit has developed a three-step analysis for determining when to remand

10    for a direct award of benefits. Such remand is generally proper only where:

11        (1) the record has been fully developed and further administrative proceedings
         would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
12        reasons for rejecting evidence, whether claimant testimony or medical opinion; and
         (3) if the improperly discredited evidence were credited as true, the ALJ would be
13        required to find the claimant disabled on remand.

14    *Trevizo v. Berryhill*, 871 F.3d 664, 682–83 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1017).

15    However, when an ALJ errs, the proper course is to remand for further administrative

16    proceedings "except in rare circumstances." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

17    1090, 1099 (9th Cir. 2014).

18        The Court agrees with Plaintiff that a remand for further proceedings is the proper

19    remedy. *See* Dkt. 11 at 12. The Court may remand for further proceedings "'when the record as a

20    whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of

21    the Social Security Act.'" *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting

22    *Garrison*, 759 F.3d at 1021). In this case, outstanding issues remain as to whether the ALJ

23    properly evaluated medical opinion evidence and how this impacts Plaintiff's RFC

24

determination. As these issues create "serious doubt as to whether the claimant is, in fact, disabled[,]" the Court exercises its discretion to remand this case for further proceedings. *Burrell*, 775 F.3d at 1141.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this order.

The Clerk is directed to enter **JUDGMENT** for Plaintiff and close the case.

Dated this 3rd day of May, 2023.

Grady J. Leupold
United States Magistrate Judge